

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-23-00636-CV

**IN THE INTEREST OF J.C.H-P.**, a Child

From the 225th Judicial District Court, Bexar County, Texas
Trial Court No. 2021PA00929
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:    Lori I. Valenzuela, Justice

Sitting:    Luz Elena D. Chapa, Justice
Beth Watkins, Justice
Lori I. Valenzuela, Justice

Delivered and Filed: October 25, 2023

AFFIRMED

Mother appeals the trial court's order terminating her parental rights to her child, J.C.H-P. (born 2018).[1] In Mother's sole issue on appeal, she contends the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights is in J.C.H-P.'s best interest. We affirm.

### BACKGROUND[2]

The Texas Department of Family and Protective Services (the "Department") initially received a report for allegations of domestic violence, drug use, and lack of stable housing.

---

[1] To protect the privacy of the minor child, we use initials to refer to the child. TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

[2] This is the second time this case has been before this court. *See generally In re J.C.H.-P.*, No. 04-22-00560-CV, 2023 WL 2290302 (Tex. App.—San Antonio Mar. 1, 2023, no pet.) (mem. op.). In her previous appeal, we sustained

J.C.H-P. was placed with the maternal Grandmother and a family service plan was generated for Mother. "Domestic violence, parenting, and drug treatment were the top three" services that Mother was to complete. Although Mother attempted to engage in some of the services, she did not complete them, and the Department ultimately pursued termination of Mother's parental rights.

On June 15, 2023, the trial court held a bench trial at which several witnesses testified, including caseworker Christine Villarreal, Grandmother, and Mother. Following the trial, the trial court signed an Order of Termination terminating Mother's parental rights and naming the Department permanent managing conservator of J.C.H-P. In its order, the trial court terminated Mother's rights pursuant to section 161.001(b)(N), (O), and (P) finding Mother constructively abandoned her child, failed to comply with the provisions of a court order that established the actions necessary for her to obtain the return of her child, used a controlled substance in a manner that endangered J.C.H-P., and that termination of Mother's parental rights as to J.C.H-P. was in the child's best interest. On appeal, Mother challenges the legal and factual sufficiency of the evidence only as to the best interest finding.

## STANDARD OF REVIEW

To terminate parental rights pursuant to Family Code section 161.001, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1); and (2) that termination is in the best interest of the child. *See* TEX. FAM. CODE §§ 161.001(b), 161.206(a).

When reviewing the sufficiency of the evidence, we apply well-established standards of review. *See* TEX. FAM. CODE §§ 101.007, 161.206(a); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam) (factual sufficiency); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per

---

Mother's complaint that she was provided ineffective assistance of counsel and remanded to the trial court for a new trial. *See id.* at *3-4.

curiam) (legal sufficiency). The trier of fact is the sole judge of the credibility of witnesses and the weight to be given their testimony. *J.P.B.*, 180 S.W.3d at 573. In a bench trial, such as here, "the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (citation omitted). We therefore defer to the trial court's judgment regarding credibility determinations. *See id.* While we must detail the evidence relevant to the issue of parental termination when reversing a finding based upon insufficient evidence, we need not do so when affirming a verdict of termination. *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014).

### BEST INTEREST

When considering the best interest of the child, we recognize the existence of a strong presumption that the child's best interest is served by preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). "[T]he best interest standard does not permit termination [of parental rights] merely because a child might be better off living elsewhere." *In re A.H.*, 414 S.W.3d 802, 807 (Tex. App.—San Antonio 2013, no pet.) (citation omitted). However, we also presume that prompt and permanent placement of the child in a safe environment is in the child's best interest. TEX. FAM. CODE § 263.307(a). The Department has the burden to rebut these presumptions by clear and convincing evidence. *See, e.g., In re R.S.-T.*, 522 S.W.3d 92, 97 (Tex. App.—San Antonio 2017, no pet.). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE § 101.007; *R.S.-T.*, 522 S.W.3d at 97. To determine whether the Department satisfies its burden, the Texas

Legislature has provided several statutory factors[3] for courts to consider regarding a parent's willingness and ability to provide a child with a safe environment, and the Texas Supreme Court has provided a similar list of factors[4] to determine a child's best interest. TEX. FAM. CODE § 263.307(b); *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).

A best interest finding, however, does not require proof of any particular factors. *In re G.C.D.*, No. 04-14-00769-CV, 2015 WL 1938435, at *5 (Tex. App.—San Antonio Apr. 29, 2015, no pet.) (mem. op.). Neither the statutory factors nor the *Holley* factors are exhaustive, and "[e]vidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest." *In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at *3 (Tex. App.—San Antonio July 25, 2018, pet. denied) (mem. op.). Evidence that proves a statutory ground for termination is probative on the issue of best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). "A trier of fact may measure a parent's future conduct by [her] past conduct [in] determin[ing] whether termination of parental rights is in the child's best interest." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). This conduct can include a history of domestic violence and drug use, which can destabilize the home and expose

---

[3] The statutory factors include: "(1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills [. . .]; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child." TEX. FAM. CODE § 263.307(b).

[4] The *Holley* factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist those individuals to promote the best interest of the child; (6) the plans for the child by these individuals or the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley*, 544 S.W.2d at 371-72.

children to physical and emotional harm if not resolved. *See, e.g., In re J.I.T.P.*, 99 S.W.3d 841, 846-48 (Tex. App.—Houston [14th Dist.] 2003, no pet.); *In re K.J.G.*, 04-19-00102-CV, 2019 WL 3937278, at *8 (Tex. App.—San Antonio Aug. 21, 2019, pet. denied) (mem. op.). In analyzing these factors, the court must focus on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ).

**ANALYSIS**

At the time of trial, J.C.H-P. was four years old and had been with Grandmother for approximately two years and nine months. The Department caseworker testified J.C.H-P. was doing well, Grandmother was meeting J.C.H-P.'s needs, and she anticipated this home to be a long-term placement for J.C.H-P. if Mother's parental rights were terminated. The caseworker further testified that Mother inconsistently saw J.C.H-P.—showing up to approximately eight to ten visitations despite forty-eight possible visitations. J.C.H-P.'s vulnerability given her young age, and the fact that J.C.H-P.'s needs are being met in the current placement, are both factors that support the trial court's finding that termination is in the child's best interest. *See In re A.M.M.*, No. 04-19-00806-CV, 2020 WL 2139308, at *4 (Tex. App.—San Antonio May 6, 2020, pet. denied) (mem. op.) ("That A.M.M. is thriving in the current placement with her maternal aunt and uncle in a stable and nurturing environment with a planned adoption further supports the trial court's finding that termination is in A.M.M.'s best interest.").

The caseworker also testified that: Mother continued to have contact with J.C.H-P.'s biological father despite an active no-contact order between the two due to domestic violence; Mother failed to submit to court ordered drug testing; and Mother did not complete her services despite having approximately two years to do so. Because evidence proving a statutory ground for termination is probative on the issue of best interest and Mother failed to comply with the service

plan, the trial court could have reasonably found that termination was in the best interest of the child. *See C.H.*, 89 S.W.3d at 28.

Additionally, the trial court could have inferred from Mother's past history of domestic violence, and from her failure to complete her services, that she lacked parental abilities—including the motivation to seek out and utilize available resources. *See In re J.M.T.*, 519 S.W.3d 258, 270 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) ("A fact finder may infer from a parent's failure to take the initiative to complete the services required to regain possession of [her] child that [she] does not have the ability to motivate [herself] to seek out available resources needed now or in the future."); *see also* TEX. FAM. CODE § 263.307(b)(10)-(12).

The trial court also could have inferred from Mother's failure to submit to court ordered drug testing that she was using drugs. *See In re K.C.B.*, 280 S.W.3d 888, 895 (Tex. App.—Amarillo 2009, pet. denied) ("The trial court may infer from a refusal to take a drug test that appellant was using drugs."). Because drug use can destabilize the home and expose children to physical and emotional harm if not resolved, its use weighs in favor of termination. *See, e.g.*, *K.J.G.*, 2019 WL 3937278, at *8.

Evidence of Mother's instability in employment and housing also supports the best interest finding. "A child's need for permanence through the establishment of a 'stable, permanent home' has been recognized as the paramount consideration in a best-interest determination." *In re L.G.R.*, 498 S.W.3d 195, 205 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). The caseworker testified Mother moved from place to place and that she had not been employed for some time. The trial court could have reasonably determined that any stability Mother might achieve was unlikely to last. *See In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009) ("[E]vidence of improved conduct, especially of short-duration, does not conclusively negate the probative value of a long history of . . . irresponsible choices.").

After reviewing the evidence under the appropriate standards of review, we conclude the trial court could have formed a firm belief or conviction that termination of Mother's parental rights was in J.C.H-P.'s best interest. Therefore, we hold the evidence is legally and factually sufficient to support the trial court's best interest finding.

## CONCLUSION

We overrule Mother's sole issue and affirm the trial court's Order of Termination.

Lori I. Valenzuela, Justice